**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James GARRETT, Defendant–Appellant.**

**No. 89–1860.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 28, 1989.

Decided May 31, 1990.

1106

Thomas M. Durkin, Jeanne M. Wither-spoon, Asst. U.S. Attys., Chicago, Ill., for plaintiff-appellee.

John T. Theis, Chicago, Ill., for defendant-appellant.

Before WOOD, Jr., RIPPLE and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

James Garrett appeals his conviction for violations of 18 U.S.C. § 922(g)(1), 18 U.S.C. § 924(c)(1), and 21 U.S.C. § 841(a)(1). For the following reasons, we affirm.

# I

## BACKGROUND

### A. *Procedural Posture*

James Garrett was charged in a three count indictment with the following offenses: (1) being a convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); (2) using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); and (3) possessing with intent to distribute approximately 19 grams of a substance containing cocaine, in violation of 21 U.S.C. § 841(a)(1). Mr. Garrett was tried before a jury and convicted on all three counts.

The district court sentenced Mr. Garrett to a twenty year term of imprisonment. The total term of twenty years consisted of fifteen years on count one, five years on count two, to run consecutively to the term on count one, and five years on count three, to run concurrently with the term on count one. 712 F.Supp. 1327. Mr. Garrett then filed a timely notice of appeal. On appeal, he raises three contentions: (1) that the evidence was not sufficient to support his conviction; (2) that the district court's imposition of consecutive sentences for violations of 18 U.S.C. §§ 922(g) and 924(c) was a violation of the double jeopardy clause of the fifth amendment of the Constitution of the United States; and (3) that the trial court erred in sentencing him without first ordering an examination or hearing to determine his competency to be sentenced.

### B. *Facts*

On April 8, 1988 Chicago police officers Carl Loeffler and Rick Galbreth were on duty as part of a tactical unit assigned to "prostitution suppression" in the eleventh district. At approximately 11:45 p.m., in the vicinity of the 2600 block of West Madison Street, the officers were engaged in surveillance of a woman whom they believed to be a prostitute. From their unmarked squad car, the officers observed this woman as she attempted to "flag down" cars driven by lone male occupants. As the officers continued their surveillance of the woman, they observed a man, later identified as the defendant, emerge from a nearby alley on foot and engage the woman in conversation. After conversing briefly, Mr. Garrett and the woman walked back into the alley from where Mr. Garrett had come.

The officers, with their headlights off, drove their vehicle northbound into the alley where they had seen the woman and Mr. Garrett go. As the officers entered the alley, they saw that Mr. Garrett and the woman were attempting to enter an Oldsmobile station wagon that was facing southbound in the alley. The woman was standing on the passenger side of the car and Mr. Garrett, who was standing on the driver's side, appeared to have unlocked and opened the driver's side door. When Mr. Garrett and the woman noticed the officers approaching, the officers turned on the headlights of their vehicle. Mr. Garrett, who was then observed to be holding a key ring with a large, shiny metal medallion, closed the door of the vehicle he had just opened. The officers then exited their car, approached Mr. Garrett and the woman, brought them to the front of the cars, and conducted a patdown search for weapons. Officer Loeffler then took his flashlight and walked over to the driver's side of the vehicle Mr. Garrett had attempted to enter. He shined his light through the window on the driver's side. On the floor of the car, directly underneath the steering wheel, Officer Loeffler observed a brown paper bag that was torn open along the side. Through this tear in the bag the officer observed a number of "snow seals" —"small, square, white pieces of paper with predetermined folds on them that are used to package narcotics."[1] Upon seeing

---

1. R. 49 at 23. Officer Loeffler testified that, based on his experience, "snow seals" or "pony packs," as they also are called, are a commonly used form of packaging for narcotics. Officer Loeffler explained that "[t]he loose powder is put in the middle and it is folded up in a certain way that [ ] remains intact and holds the powder inside." *Id.* Officer Loeffler testified that in his six years of experience on the police force and his one year of experience in the tactical

the snow seals, Officer Loeffler informed Officer Galbreth, who also observed through the window the torn bag and the snow seals. As Officer Galbreth was handcuffing Mr. Garrett, Officer Loeffler returned to the car, opened the door, and lifted up the paper bag. Underneath the bag on the floor the officer saw a .25 caliber, semi-automatic pistol. The officer checked the gun and determined that it was fully loaded, with one round in the chamber. After Mr. Garrett was placed under arrest, the officers conducted a more thorough search of the vehicle, but recovered no further weapons or contraband. As Mr. Garrett was being handcuffed, he dropped a set of two keys on a ring with a large metal medallion. The officers discovered that the two keys fit the ignition and door of the vehicle in which the drugs and weapon were found.

Neither the handgun nor the automobile itself was registered to Mr. Garrett. The government produced evidence which showed that the gun was purchased by LeAndrew Taylor in Greenwood, Mississippi. Taylor testified that he had entered a pawn shop in Greenwood with a friend, Ernest Mays, and another person known as the "Rev." Taylor further testified that he purchased the guns for his friend Mays, who gave them to the "Rev." Officer Loeffler had testified earlier that, when he had asked Mr. Garrett for identification, Mr. Garrett replied that he was a reverend and was known on the street as the "Rev." Mr. Taylor, however, did not identify Mr. Garrett in court as the "Rev."

The 1975 Oldsmobile station wagon was registered in the name of Anthony Mugnolo, of Cicero, Illinois. Mugnolo testified that in 1988 he sold the car to two people: a tall, heavy, black male and a somewhat heavy female. Mugnolo further testified that the man paid the $500 purchase price in cash. Mugnolo then gave the man a signed title and keys to the car, and began to remove his license plates from the car when the purchaser requested that Mugnolo leave the tags on so that the purchaser

would not be arrested for driving without a license plate. Upon the purchaser's promise to return the tags later that day, Mugnolo agreed to this arrangement. The purchaser, however, never returned with Mugnolo's tags. At trial, Mugnolo never was asked to make a positive identification of Mr. Garrett as the purchaser of the Oldsmobile.

The "snow seals" found in the Oldsmobile were thirty-eight individual packets, each of which contained cocaine. The combined weight of the substance found in the packets was approximately 19 grams of a mixture containing 3.5 grams of cocaine.

The parties stipulated that, prior to April 8, 1988, the date of the incident in question, Mr. Garrett was a convicted felon. The parties also stipulated that, prior to April 8, 1988, the semi-automatic weapon found in the Oldsmobile had traveled in interstate commerce.

After the government rested its case, the defendant presented no evidence and also rested its case. The jury returned a verdict of guilty against the defendant on all three counts in the indictment. Prior to sentencing, the defendant moved for an examination to determine the defendant's mental fitness for sentencing. The motion was based on an unsworn statement from the defendant's probation officer regarding her observations of the defendant during the presentence investigation and her discovery that the defendant had been hospitalized for psychiatric treatment on three previous occasions. The district court denied this motion, without prejudice, as being premature. The court noted that it had not observed any evidence of Mr. Garrett's psychological difficulties during trial, and that it did not find a mere conversation between the probation officer and defense counsel established the need for a presentence psychological examination. The court then declined to take any further action unless the probation officer ad-

---

unit, he had, in the course of arresting people, seen snow seals an average of three or four times per week. *Id.* at 24. Officer Galbreth

testified that his experience was similar. *Id.* at 57.

dressed the need for such an examination in the presentence report.

The district court sentenced Mr. Garrett to a total term of twenty years imprisonment. The total term of twenty years was apportioned among the individual counts as follows: fifteen years on count one, the violation of 18 U.S.C. § 922(g)(1); five years on count two, the violation of 18 U.S.C. § 924(c)(1), to be served consecutively to the term on count one; and five years on count three, the violation of 21 U.S.C. § 841(a)(1), to run concurrently with the term imposed on count one. This twenty year sentence represented the minimum statutory sentence available,[2] but constituted a departure from the Federal Sentencing Guidelines, which would have imposed a minimum term of thirty-five years imprisonment.[3]

## II

## ANALYSIS

### A. *Sufficiency of the Evidence*

 Mr. Garrett argues on appeal that the evidence was insufficient to support the conclusion that he possessed either the handgun or the cocaine that formed the basis of his conviction. On a challenge to the sufficiency of the evidence, " '[t]he test is whether ... *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " *United States v. Duncan,* 896 F.2d 271, 277 (7th Cir.1990) (quoting *United States v. Pritchard,* 745 F.2d 1112, 1122 (7th Cir. 1984) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original)), *cert. denied,* 474 U.S. 1085, 106 S.Ct. 860, 88 L.Ed.2d 899 (1986)). Moreover, we view all the evidence and the inferences reasonably drawn from that evidence in favor of the government. *Id.*

### 1. The Firearms Convictions

We first consider Mr. Garrett's contention that the evidence did not prove possession of the firearm necessary to support his convictions under 18 U.S.C. §§ 922(g) and 924(c). 18 U.S.C. § 922(g) reads, in pertinent part, as follows:

> It shall be unlawful for any person—
>
> (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
>
> . . . . .
>
> to ... *possess* in or affecting commerce, any firearm or ammunition; ....

(emphasis supplied). 18 U.S.C. § 924(c)(1) reads, in pertinent part, as follows:

> Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, *uses or carries* a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years.... Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence or drug trafficking crime in which the firearm was used or carried.

(emphasis supplied).

As indicated by these provisions, in order to support a conviction under both statutes,

---

**2.** Twenty years was the minimum sentence available because the mandatory five year term imposed under 18 U.S.C. § 924(c) must, under the terms of the statute, run consecutively to any other term imposed on the defendant. *See* 18 U.S.C. § 924(c)(1). In this case, the addition of this five year term to Mr. Garrett's mandatory fifteen year sentence for violation of 18 U.S.C. § 922(g)(1) guaranteed that his minimum total sentence would be twenty years. (Because

Mr. Garrett had three previous felony convictions, he was subject to an enhanced statutory penalty of fifteen years imprisonment for his violation of 18 U.S.C. § 922(g). 18 U.S.C. § 924(e)(1). He does not appeal this statutory enhancement of his punishment.).

**3.** The government has not appealed the district court's decision to depart from the guidelines.

the prosecution must show that the defendant "possess[ed]" the firearm, within the meaning of 18 U.S.C. § 922(g), and that he "use[d] or carrie[d]" the firearm, within the meaning of 18 U.S.C. § 924(c)(1). We will consider the evidence under each of these provisions.

### a. *Possession under 18 U.S.C. § 922(g)(1)*

■ In order to secure a conviction under section 922(g)(1), the government must prove, beyond a reasonable doubt, the following: "(1) that the defendant had a previous felony conviction, (2) that the defendant possessed a firearm, and (3) that the firearm had travelled in or affected interstate commerce." *United States v. Petitjean*, 883 F.2d 1341, 1347 (7th Cir.1989). As noted above, the parties stipulated elements (1) and (3); thus, possession of the firearm is the only contested issue under section 922(g). As Mr. Garrett concedes, the principles of constructive possession are applicable to the questions of possession under section 922(g). *See United States v. Sanchez*, 859 F.2d 483, 486 (7th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1144, 103 L.Ed.2d 204, (1989); *United States v. Pirovolos*, 844 F.2d 415, 423 (7th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988); *see also United States v. Vincent*, 901 F.2d 97, 98 n. 1 (8th Cir.1990); *United States v. Patterson*, 886 F.2d 217, 219 (8th Cir.1989) (per curiam); *United States v. Cardenas*, 864 F.2d 1528, 1533 (10th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989); *United States v. Craven*, 478 F.2d 1329, 1333–34 (6th Cir.), *cert. denied*, 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed.2d 85 (1973). In the context of a similar statute, 26 U.S.C. § 5861(d), which prohibits possession of an unregistered firearm, this court stated that

> "[p]ossession may be either actual or constructive and it need not be exclusive but may be joint.... Actual possession exists when a tangible object is in the immediate possession or control of the party. *Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others....* Both actual possession and constructive possession may be proved by direct or circumstantial evidence. It is not necessary that such evidence remove every reasonable hypothesis except that of guilt."

*United States v. Taylor*, 728 F.2d 864, 868 (7th Cir.1984) (quoting *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir.), *cert. denied*, 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed.2d 85 (1973)) (citations omitted) (emphasis supplied by the *Taylor* court).[4] We conclude that the evidence, viewed in the light most favorable to the government, is sufficient to support a finding of constructive possession for purposes of the section 922(g) conviction. The police saw Mr. Garrett using a set of keys to gain entry to a vehicle with a loaded weapon on the floor of the driver's side. This display demonstrated sufficient power and intention to

---

**4.** The court also noted in *Taylor* that "proof that a person actually or constructively possessed an unregistered firearm, in violation of 26 U.S.C. § 5861(d), is sufficient proof that the person '*knowingly* possessed' the unregistered firearm in question." 728 F.2d at 869 (emphasis supplied). Such a conclusion follows from the test for constructive possession, which requires that a defendant know of the contraband before he can intend to exercise dominion or control over it. Similarly, we believe that the evidence of Mr. Garrett's constructive possession of the weapon supports the conclusion that he "knowingly possessed" the firearm. *See United States v. McNeal*, 900 F.2d 119, 121–22 (7th Cir.1990) (for purposes of section 922(g)(1) conviction, circumstantial evidence was sufficient to estab-

lish that defendant knowingly possessed gun found in his car after police heard shots and then saw defendant's car travelling from apparent direction where shots were fired); *United States v. Edun*, 890 F.2d 983, 987 (7th Cir.1989) (proof that the defendant "knowingly carried" a firearm in violation of § 924(c) is a "'rudimentary mental element'" that could be established either by direct or circumstantial evidence) (quoting *United States v. Barber*, 594 F.2d 1242, 1244 (9th Cir.), *cert. denied*, 444 U.S. 835, 100 S.Ct. 69, 62 L.Ed.2d 46 (1979)). In *Edun*, the evidence supported a conclusion that the defendant knew of the weapon found in the trunk of a car toward which he and a drug courier were walking when arrested.

exercise dominion and control over the firearm.[5]

### b. *"Use or carry" under 18 U.S.C. § 924(c)*

Two essential elements must be proven in order to secure a conviction under 18 U.S.C. § 924(c): (1) that the defendant *used or carried* the firearm, and (2) that this use or carrying was *during and in relation to* a drug trafficking offense.[6] *United States v. Edun,* 890 F.2d 983, 986 (7th Cir.1989). We must determine whether there was sufficient evidence to support the conclusion that Mr. Garrett "used or carried" the firearm within the meaning of section 924(c). The defendant was apprehended as he attempted to open the door of a car to which he had a set of keys and which contained a bag of packaged cocaine and a weapon under the driver's seat. This evidence, viewed most favorably toward the government, is sufficient to permit the conclusion that the defendant knowingly "used or carried" the weapon within the meaning of 18 U.S.C. § 924(c).[7]

**5.** *See, e.g., United States v. Jackson,* 835 F.2d 1195, 1196 (7th Cir.1987) (conviction affirmed under predecessor statute of § 922(g) where loaded gun was found in car defendant had just exited; car was registered to defendant's father), *cert. denied,* 485 U.S. 969, 108 S.Ct. 1244, 99 L.Ed.2d 442 (1988); *United States v. Coe,* 718 F.2d 830, 833, 840–41 (7th Cir.1983) (jury properly instructed on constructive possession as to defendant who was convicted of various firearm offenses based on firearm that was found in glove compartment of car in which he was a passenger); *United States v. Matra,* 841 F.2d 837, 841 (8th Cir.1988) (evidence of constructive possession of firearm sufficient where defendant, who was found in house, possessed key to locked bedroom where gun was found); *cf. United States v. Perez,* 870 F.2d 1222, 1224–25 (7th Cir.) (defendant's conviction under § 922(g) affirmed where weapons were found in secret compartment in defendant's car), *cert. denied,* —— U.S. ——, 110 S.Ct. 136, 107 L.Ed.2d 95 (1989); *United States v. Karlin,* 852 F.2d 968, 969–70 (7th Cir.1988) (although possession not specifically argued as grounds for reversal, defendant's conviction was affirmed under predecessor statute of § 922(g)(1) where defendant, who was apprehended by private citizens, was found lying on the ground with foot inside open van door and police found firearm in van under driver's seat), *cert. denied,* —— U.S. ——, 109 S.Ct. 1142, 103 L.Ed.2d 202 (1989); *United States v. Marshall,* 719 F.2d 887, 889–90 (7th Cir.1982) (evidence of defendant's constructive possession of weapon for purposes of transporting a weapon in violation of section 922(h)(1) was sufficient where evidence showed that defendant paid for the weapon and put it in girlfriend's trunk in Wisconsin, and gun was found in closet of girlfriend's apartment in Illinois where defendant was present and had been staying).

**6.** The drug trafficking prong of this offense is discussed *infra* p. 1112.

**7.** *See, e.g., United States v. Ocampo,* 890 F.2d 1363, 1366, 1370 (7th Cir.1989) (evidence sufficient to support conviction for "use" of weapon after gun was found under passenger seat where defendant had been seen attempting to conceal an object); *United States v. Edun,* 890 F.2d 983, 985, 987–88 (7th Cir.1989) (evidence sufficient to support knowledge of firearm's presence for purpose of conviction under § 924(c) where defendant apprehended while walking toward his car and search of car revealed gun in trunk); *United States v. Rosado,* 866 F.2d 967, 970 (7th Cir.) (defendant who placed jacket with gun in pocket in front seat of open car while drug transaction was taking place thirty feet away did not abandon his weapon for purposes of the "use and carry" requirement), *cert. denied,* —— U.S. ——, 110 S.Ct. 117, 107 L.Ed.2d 79 (1989); *United States v. Coe,* 718 F.2d 830, 833–34 (7th Cir.1983) (defendant's conviction for carrying firearm in violation of § 924(c) sustained where gun was found in glove compartment of car in which defendant was riding as a passenger); *United States v. Munoz–Fabela,* 896 F.2d 908, 911 (5th Cir.1990) (evidence sufficient to support § 924(c)(1) conviction where gun found on floorboard of car within view and reach of occupant who was engaging in protective surveillance for others during drug transaction); *United States v. Evans,* 888 F.2d 891, 893–96 (D.C.Cir.1989) (jury properly could infer that defendant "carried" weapon in violation of § 924(c) based on evidence that defendant transported drugs and guns in knapsack on taxi and bus and kept gun "within reach" in acquaintance's apartment where he slept; as to other defendants, evidence that guns were present to protect the contraband supported theory that guns were "used" in relation to the underlying drug trafficking offense), *cert. denied,* —— U.S. ——, 110 S.Ct. 1325, 108 L.Ed.2d 500 (1990); *United States v. Coburn,* 876 F.2d 372, 373–75 (5th Cir.1989) (evidence supported conviction under § 924(c) for using gun in relation to drug trafficking offense when unloaded shotgun was visible on gun rack in rear window of pickup truck where drugs found; fact that no shells were found in truck did not preclude jury from reasonably concluding that the gun "emboldened" the defendant; jury was free to reject defendant's assertion that the shotgun belonged to someone else; fact that plaintiff claimed vehicle was borrowed from a friend in whose name truck was registered did not affect defen-

## 2. The Evidence of Possession with Intent to Distribute

Mr. Garrett also asserts that the evidence is insufficient to support his conviction for possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a). Mr. Garrett makes two arguments in support of this contention. First, he argues that the evidence was insufficient to support the conclusion that he possessed the cocaine found in the car. Second, he asserts that, despite the thirty-eight individual packages in which the cocaine was found, the total amount of cocaine was too small to support a finding of intent to distribute. We consider these arguments in turn.

### a. *Constructive possession of the cocaine*

Mr. Garrett concedes that constructive possession of narcotics is sufficient to support a conviction under 21 U.S.C. § 841(a). *See, e.g., United States v. Briscoe*, 896 F.2d 1476, 1522 (7th Cir.1990); *United States v. Moya–Gomez*, 860 F.2d 706, 756 (7th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989); *United States v. Rodriguez*, 831 F.2d 162, 167 (7th Cir.1987), *cert. denied*, 485 U.S. 965, 108 S.Ct. 1234, 99 L.Ed.2d 433 (1988); *United States v. Perlaza*, 818 F.2d 1354, 1360 (7th Cir.), *cert. denied*, 484 U.S. 861, 108 S.Ct. 176, 98 L.Ed.2d 130 (1987).

In *Moya–Gomez*, this court explained the concept of constructive possession:

> The rule of constructive possession holds that "a person can be convicted for possessing cocaine though he does not possess it in a literal sense." *United States v. Manzella*, 791 F.2d 1263, 1266 (7th Cir.1986). "To establish constructive possession of a controlled substance, the government must produce evidence demonstrating 'ownership, dominion, or control over the contraband....'" *United States v. Galiffa*, 734 F.2d 306, 316 (7th Cir.1984) (quoting *United States v. Ferg*, 504 F.2d 914, 916–17 (5th Cir.1974)).

860 F.2d at 756.

In *Perlaza*, we concluded that a defendant constructively possessed cocaine because he had registered for a motel room in which cocaine was found, had entered the bathroom where the cocaine had been concealed, and was in possession of a key to the motel room when he was arrested. 818 F.2d at 1360; *see also Moya–Gomez*, 860 F.2d at 756 (evidence sufficient to support constructive possession where defendant had combination to safe in which cocaine was stored and regularly took cocaine from the safe). Similarly, we conclude that evidence of Mr. Garrett's possession and use of a key to open the door of the car in which the cocaine was found permitted the jury to conclude that Mr. Garrett constructively possessed the cocaine.[8]

dant's guilt); *United States v. Cardenas*, 864 F.2d 1528, 1530, 1534–36 (10th Cir.) (defendant found to be "carrying" a weapon within the meaning of § 924(c) when handgun found in open dashboard compartment on driver's side of truck he was driving), *cert. denied*, —— U.S. ——, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989); *United States v. Brockington*, 849 F.2d 872, 874–76 (4th Cir.1988) (defendant "carried" gun that was found under floormat directly beneath defendant's seat in a cab); *United States v. Machado*, 804 F.2d 1537, 1542, 1547 (11th Cir.1986) (evidence sufficient to convict defendant of § 924(c) violation where guns found on floor of rental car defendant was driving).

**8.** The evidence, viewed in a light most favorable to the government, may have supported the conclusion that Mr. Garrett owned the car in which the drugs were found. As we noted above, however, for some unexplained reason, the registered owner of the automobile did not make a positive identification of Mr. Garrett as the person to whom he sold the car. However, ownership of the property in which contraband is found is not essential to a finding of possession of the contraband. *See, e.g., United States v. Rush*, 890 F.2d 45, 51 (7th Cir.1989) (alleged prejudicial testimony concerning defendant's ownership of car in which gun was found was of "marginal relevance," because "[a]ctual control," rather than "[l]egal ownership," was the key factor); *United States v. Oliver*, 683 F.2d 224 (7th Cir.1982) (defendant's conviction affirmed for possessing weapons and ammunition found in a van defendant had borrowed); *United States v. Evans*, 888 F.2d 891, 893–96 (D.C.Cir.1989) (evidence supported defendants' conviction for constructive possession based, in part, on drugs found in knapsack that apparently belonged to co-defendant), *cert. denied*, —— U.S. ——, 110 S.Ct. 1325, 108 L.Ed.2d 500 (1990); *United States v. Coburn*, 876 F.2d 372, 373–74 (5th Cir.1989) (conviction affirmed for possession with intent to distribute where marijuana

### b. Intent to distribute

■ We agree with Mr. Garrett that possession of a small amount of a controlled substance, standing alone, is an insufficient basis from which to infer an intent to distribute. *United States v. Washington*, 586 F.2d 1147, 1153 (7th Cir.1978); *see United States v. Hardy*, 895 F.2d 1331, 1334 (11th Cir.1990); *United States v. Franklin*, 728 F.2d 994, 999 (8th Cir.1984) (collecting cases); *cf. Turner v. United States*, 396 U.S. 398, 420–24, 90 S.Ct. 642, 654–56, 24 L.Ed.2d 610 (1970).[9] In this case, however, more was found than simply 19 grams of a substance containing 3.5 grams of cocaine. That cocaine was packaged in 38 individual "snow seals" or "pony packs," a common method of distributing cocaine. Moreover, a loaded pistol was found directly underneath the bag containing the cocaine. Intent to distribute has been inferred in cases where small amounts of drugs have been packaged in a manner consistent with distribution[10] or have been possessed in conjunction with other indicia of drug distribution, such as a weapon.[11] Thus, we conclude that, despite the small aggregate amount of cocaine involved, the other indicia of distribution in this case, viewed in a light most favorable to the government, support the inference of intent to distribute. *See, e.g., United States v. Ramirez*, 608 F.2d 1261, 1264 (9th Cir.1979) (in light of other evidence, five grams of cocaine was held a distributable amount).

### B. Double Jeopardy

Mr. Garrett also asserts that the consecutive sentences imposed on him for convic-

was found in pick-up truck defendant was driving, even though defendant claimed that the truck was borrowed from a friend to whom the truck actually was registered); *United States v. Gaviria*, 740 F.2d 174, 178, 185 (2d Cir.1984) (evidence sufficient to support constructive possession of cocaine by defendant who claimed she no longer lived in apartment where drugs were found, but possessed key to apartment and to box inside apartment where drugs were found); *United States v. Damsky*, 740 F.2d 134, 139 (2d Cir.) (defendant was in constructive possession of hashish he knew was in camper after being given key to camper), *cert. denied*, 469 U.S. 918, 105 S.Ct. 298, 83 L.Ed.2d 233 (1984).

9. In a prosecution for violation of a former statute, 26 U.S.C. § 4704(a), which prohibited the purchase, sale, or distribution of narcotic drugs except in a stamped package which evidenced that a tax had been paid, the Supreme Court held that the evidence supported the conclusion that the defendant was distributing heroin based on the fact that the defendant possessed some 275 glassine bags of heroin without the required revenue stamps attached. However, the Court concluded that the evidence did not support a similar conclusion regarding a tinfoil package containing a 14.68 gram mixture of sugar and only 5% cocaine, because such a small quantity was consistent with possession for personal use rather than resale.

10. *See United States v. Gooding*, 695 F.2d 78, 84 (4th Cir.1982) (approximately 25 grams of cocaine with street value of $6,000 which was "packaged in a way typical ... of the packaging used by narcotics distributors" supported the inference of intent to distribute); *United States v. Staten*, 581 F.2d 878, 881–82, 886 (D.C.Cir.

1978) (intent to distribute may be inferred from the possession of drug-packaging paraphernalia); *United States v. Hollman*, 541 F.2d 196, 199–200 (8th Cir.1976) (evidence that defendant had possessed box containing 127 small foil metal packets, each of which contained a small amount of cocaine, supported inference of intent to distribute); *see also United States v. Dunn*, 846 F.2d 761, 764 (D.C.Cir.1988) (inference of intent to distribute supported by nine vials of cocaine found in a key case near the defendant, although evidence of other drugs in the house and a firearm also was considered); *United States v. Herron*, 567 F.2d 510, 513 (D.C. Cir.1977) (13 tinfoil packets of heroin found in apartment on top of table with $150 to $200 in cash was evidence of intent to distribute, although evidence of more drugs, cash, and narcotics cutting paraphernalia that was found later also supported intent to distribute).

11. *See United States v. Rush*, 890 F.2d 45, 49, 52 (7th Cir.1989) (loaded weapon found in car defendant was walking toward when arrested was relevant evidence in prosecution for possession of heroin with intent to distribute; weapon is a " 'tool' of the trade," and was "essential part of the crime of possession with intent to distribute"); *United States v. Dunn*, 846 F.2d 761, 764 (D.C.Cir.1988) (loaded gun found on couch near defendant suggested that he exercised control over the drugs in the house and, as a "tool of the narcotic trade," gun supported inference of intent to distribute); *United States v. Matra*, 841 F.2d 837, 841 (8th Cir.1988) (intent to distribute may be inferred from, among other things, the presence of firearms); *United States v. LaGuardia*, 774 F.2d 317, 320 (8th Cir.1985) (firearms, as "tools of the narcotics dealer's trade," are evidence of intent to distribute).

tions under both 18 U.S.C. §§ 922(g) and 924(c) violate the double jeopardy clause of the fifth amendment. The essence of Mr. Garrett's argument is that sections 922(g) and 924(c) constitute multiple punishments for the same criminal conduct—possession of a firearm. We disagree.

■■■ The double jeopardy clause protects a defendant against "multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). In determining whether cumulative punishment for the "same conduct" violates the double jeopardy clause, we first determine whether Congress expressly intended each violation to be a separate offense. *Garrett v. United States*, 471 U.S. 773, 778, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764 (1985); *United States v. Foster*, 789 F.2d 457, 459 (7th Cir.), *cert. denied*, 479 U.S. 883, 107 S.Ct. 273, 93 L.Ed.2d 249 (1986). If the legislative intent to impose cumulative punishments is clear from the face of the statute or the legislative history, the imposition of cumulative punishments does not violate the double jeopardy clause, and no further inquiry is necessary. *Missouri v. Hunter*, 459 U.S. 359, 368–69, 103 S.Ct. 673, 679–80, 74 L.Ed.2d 535 (1983); *see also id.* at 366, 103 S.Ct. at 678 ("With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."); *United States v. Powell*, 894 F.2d 895, 899–900 (7th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 2189, 109 L.Ed.2d 517 (1990). If the legislative intent is unclear, however, an intent to create separate offenses may be inferred by appli-

cation of the time-honored test set forth in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). Under the *Blockburger* test, two statutory provisions are considered separate offenses if each provision requires proof of a fact that the other does not. *Id.; United States v. Marren*, 890 F.2d 924, 936 (7th Cir.1989).

We conclude that Congress expressly authorized cumulative punishments in this case. Section 924(c)(1) expressly states that

> [n]otwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, *nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment* including that imposed for the crime of violence or drug trafficking crime in which the firearm was used or carried.

18 U.S.C. § 924(c)(1). This language unambiguously states that the term of imprisonment imposed under section 924(c) must run consecutively to *any* other term of imprisonment imposed on the defendant.[12] Although nothing in section 922(g) suggests a contrary result, we note that section 924(c)(1) also states that its consecutive sentence requirement shall apply "notwithstanding any other provision of law." As the Supreme Court noted in *Hunter*, "[l]egislatures, not courts, prescribe the scope of punishments." 459 U.S. at 368, 103 S.Ct. at 679; *see United States v. Hunter*, 887 F.2d 1001, 1003 (9th Cir.1989) (per curiam) (also reaching the conclusion

---

**12.** We believe that Mr. Garrett's reliance on *Busic v. United States*, 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980), and *Simpson v. United States*, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978), is misplaced. In those cases, in an effort to divine Congress' intent under § 924(c), the Court concluded that Congress did not intend for a separate enhanced penalty under § 924(c) to be imposed when the predicate felony statute contains its own enhanced penalty for the use of a dangerous weapon. *Busic*, 446 U.S. at 403–04, 100 S.Ct. at 1751–52; *Simpson*, 435 U.S. at 12–13, 98 S.Ct. at 912–13. In 1984, however, Congress amended § 924(c)

to make clear that its intent indeed was to authorize a conviction and sentence under § 924(c), even if the underlying offense already contained an enhancement provision of its own. *See* S.Rep. No. 225, 98th Cong., 1st Sess. 312–14 (1983), *reprinted in* 1984 U.S. Code Cong. & Admin. News 3182, 3490–92; *see also United States v. Sanchez–Lopez*, 879 F.2d 541, 559 n. 1 (9th Cir.1989); *United States v. Harris*, 832 F.2d 88, 90 (7th Cir.1987) (per curiam), *United States v. Chalan*, 812 F.2d 1302, 1315–16 (10th Cir. 1987); *United States v. Pisani*, 787 F.2d 71, 74 (2d Cir.1986).

that Congress intended a sentence under section 924(c) to be imposed consecutively to any other sentence a defendant received, including a sentence for violation of section 922(g)), *cert. denied,* — U.S. ——, 110 S.Ct. 1159, 107 L.Ed.2d 1062 (1990).

Even if congressional intent were unclear in this case, we would have no difficulty concluding that sections 922(g) and 924(c) constitute separate offenses under *Blockburger.* Each requires proof of a fact that the other does not. While section 922(g) requires proof that the defendant who possessed the weapon was a *convicted felon* at the time he possessed the weapon, section 924(c) does not. Section 924(c), on the other hand, requires that the weapon be used or carried *during and in relation to a drug trafficking offense.* 18 U.S.C. § 924(c)(1). Section 922(g) contains no such requirement. *See Hunter,* 887 F.2d at 1003. As is evident from the language and legislative history of these two statutory provisions, they were designed to deter and punish two distinct types of antisocial conduct: section 922(g)(1) was intended to keep guns out of the hands of convicted felons,[13] and section 924(c)(1) was intended to discourage drug traffickers from carrying or using firearms in conjunction with their illegal trade.[14] The district court's imposition of cumulative punishments for the violation of these two statutes does not violate the double jeopardy clause.

### C. *Failure to Hold a Hearing to Determine Competency for Sentencing*

■ Finally, Mr. Garrett argues that the district court erred in denying his motion for a hearing pursuant to 18 U.S.C. § 4241(a) to determine his competency to be sentenced. The statute provides as follows:

At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. *The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.*

18 U.S.C. § 4241(a) (emphasis supplied). The statute itself sets forth the standard that the district court must use in granting or denying a competency hearing: "[I]f there is *reasonable cause to believe* that the defendant may *presently* be suffering from a mental disease or defect rendering him mentally incompetent *to the extent* that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense," "[t]he court *shall* grant the motion." 18 U.S.C. § 4241(a) (emphasis supplied); *see United States v. White,* 887 F.2d 705, 710 (6th Cir.1989). As the statutory language suggests, the need for competency also extends beyond trial to the sentencing phase of a proceeding, *United*

---

**13.** *See Dickerson v. New Banner Institute, Inc.,* 460 U.S. 103, 119, 103 S.Ct. 986, 995, 74 L.Ed.2d 845 (1983) (citing legislative history and explaining that goal of § 922(g) is to keep firearms away from certain persons, "such as those convicted of serious crimes, who might be expected to misuse them"); *United States v. Crochet,* 788 F.2d 1061, 1062 (5th Cir.1986) (purpose of § 922(g) is to prohibit possession of firearms by those considered "unreliab[le]" by Congress) (quoting *Dickerson,* 460 U.S. at 114, 103 S.Ct. at 992).

**14.** *See United States v. Powell,* 894 F.2d 895, 900 (7th Cir.1990) (citing statement of Congressman Poff, sponsor of the original version of section 924(c), who stated that its intent was " 'to persuade the man who was tempted to commit a federal felony to leave his gun at home,' " (quoting 144 Cong.Rec. 22,231 (1968)), *cert. denied,* — U.S. ——, 110 S.Ct. 2189, 109 L.Ed.2d 517 (1990). In 1986, Congress amended the statute to include drug trafficking crimes, and the legislative history similarly reveals that the intent of this amendment was to provide greater protection for law enforcement officers and the public by severely punishing drug traffickers who carry or use firearms as part of their illegal drug trade. *See* Firearms Owners' Protection Act, H.R.Rep. No. 495, 99th Cong., 2d Sess., *reprinted in* 1986 U.S.Code Cong. & Admin. News 1327, 1328, 1333, 1353.

States v. Pellerito, 878 F.2d 1535, 1544 (1st Cir.1989), and the failure to grant such a hearing in the face of sufficient evidence to establish reasonable cause to believe that a defendant is mentally incompetent is a violation of due process. *See Pate v. Robinson*, 383 U.S. 375, 385, 86 S.Ct. 836, 842, 15 L.Ed.2d 815 (1966); *United States v. White*, 887 F.2d at 709; *Hall v. United States*, 410 F.2d 653, 658 & n. 2 (4th Cir.), *cert. denied*, 396 U.S. 970, 90 S.Ct. 455, 24 L.Ed.2d 436 (1969).

■ The test for competency is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960) (per curiam). Some courts of appeals have reviewed the district court's determination under the abuse of discretion standard [15] and others have characterized their scrutiny as "plenary review." [16] Whether, as a practical matter, this difference is real or semantical is open to question. Certainly, the abuse of discretion standard does not mean no review at all. *See, e.g., United States v. Auen*, 846 F.2d 872, 877–78 (2d Cir.1988) (employing the abuse of discretion standard but reversing the district court's decision not to hold a hearing); *see also Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 936 (7th Cir.1989) (en banc); *In re Ronco, Inc.*, 838 F.2d 212, 217 (7th Cir.1988).

Under 18 U.S.C. § 4244, the statutory predecessor of section 4241(a), this court eschewed articulating the standard in terms of these semantical pigeonholes and opted instead for a more pragmatic approach. Writing for the court in *United States v. Johns*, 728 F.2d 953 (7th Cir. 1984), Judge Eschbach stated:

When a court had made findings about the competency of a defendant, we will overturn those findings only upon a showing that they are clearly erroneous. ... But when there has been no psychiatric examination or judicial determination, our review is comprehensive.

*Id.* at 956 (citation omitted).

Neither party has suggested that the present statute requires a change in the applicable standard and our own review of its legislative history has produced no such indication. Indeed, this court's approach in *Johns* has been specifically followed by our colleagues in the First Circuit in reviewing a case under the new statute. *United States v. Pellerito*, 878 F.2d 1535, 1545 (1st Cir.1989). We do note, however, that, while our review is comprehensive, the district court retains a good deal of latitude in how it evaluates the need for a formal competency hearing. In some instances, the court may hold a preliminary hearing before deciding whether to conduct a formal hearing under the statute. On other occasions, circumstances may indicate that the most useful way of determining whether "reasonable cause" exists is to examine evidentiary material tending to prove or disprove the underlying factual allegations. The court may interrogate the defendant and his counsel. Needless to say, the district court's findings of fact will not be disturbed unless clearly erroneous.

■ In this case, the district judge, the prosecutor, and defense counsel all observed Mr. Garrett throughout the course of trial, and none of them saw anything to suggest that Mr. Garrett might be incompetent to understand the nature of the proceedings or to assist in his own defense. The sole basis for Mr. Garrett's motion was defense counsel's unsworn account of a discussion between defense counsel and the probation officer who was preparing the

---

**15.** *See United States v. West*, 877 F.2d 281, 285 n. 1 (4th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 195, 107 L.Ed.2d 149 (1989); *United States v. Auen*, 846 F.2d 872, 877–78 (2d Cir.1988); *Streetman v. Lynaugh*, 835 F.2d 1521, 1525–26 (5th Cir.1988); *United States v. Vamos*, 797 F.2d 1146, 1150 (2d Cir.1986), *cert. denied,* 479 U.S. 1036, 107 S.Ct. 888, 93 L.Ed.2d 841 (1987).

**16.** *See United States v. Renfroe*, 825 F.2d 763, 766 (3d Cir.1987); *see also United States v. Pellerito*, 878 F.2d 1535, 1545 (1st Cir.1989) (undertaking "scrupulous[ ]" review when district court has denied competency hearing or examination; also citing *Renfroe* ).

presentence report. The probation officer allegedly informed defense counsel of her discovery that Mr. Garrett had been hospitalized for psychiatric reasons on three prior occasions. Defense counsel also related the probation officer's observation that during the course of her conversation with Mr. Garrett, he had said "certain things ... that were out of contact with reality. [The probation officer] would check [these statements] out and [they] could not have been true." R. 50 at 4.

In addressing these contentions, the district court concluded that these alleged indications of incompetence, based solely on a conversation between defense counsel and a probation officer and coming after a trial in which neither the court, nor the government, nor defense counsel had observed any problems, were "a little thin." R. 50 at 2. Nonetheless, the district court indicated a willingness to revisit the issue if the probation officer noted these concerns in the presentence report. The court also noted the possibility of a posttrial procedure through which the defendant could be examined if the probation report raised a question concerning the defendant's competency. Although defense counsel stated that "we may be seeking that sort of examination [the court] mentioned," R. 50 at 3, there is no evidence in the record that any request for any examination was renewed after the issuance of the presentence report.

We conclude that the district court did not err in denying the motion. "Not every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges." *United States ex rel. Foster v. DeRobertis*, 741 F.2d 1007, 1012 (7th Cir. 1984), *cert. denied*, 469 U.S. 1193, 105 S.Ct. 972, 83 L.Ed.2d 975 (1985); *see also United States v. Vamos*, 797 F.2d 1146, 1150 (2d Cir.1986), *cert. denied*, 479 U.S. 1036, 107 S.Ct. 888, 93 L.Ed.2d 841 (1987). Moreover, *prior* psychiatric commitments are not necessarily dispositive of whether "the defendant may *presently* be suffering from a mental disease or defect rendering him mentally incompetent *to the extent*

that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a) (emphasis supplied). "Additionally, since incompetency involves an inability to assist in the preparation of a defense or rationally to comprehend the nature of the proceedings, failure by trial counsel to indicate the presence of such difficulties provides substantial evidence of the defendant's competence." *Vamos*, 797 F.2d at 1150. In this case, defense counsel expressed surprise to learn of the suggestion that the defendant might suffer from mental illness.

Finally, the general reference to statements made by Mr. Garrett "that were out of contact with reality" is too vague a basis to provide reasonable cause to believe that he did not understand the nature of the charges against him or was unable to assist properly in his defense. Again, the observations of the court and defense counsel, which revealed no cause for concern, were more probative on this point. Additionally, defense counsel's statement that the probation officer would "check ... out" these alleged far-fetched statements made to her by Mr. Garrett suggests that the statements were not so bizarre on their face as to indicate that Mr. Garrett was "out of contact with reality." R. 50 at 4. And, as noted above, although the district judge indicated a willingness to reconsider the issue after the presentence report was issued, defense counsel never renewed the motion. *See United States v. Rovetuso*, 768 F.2d 809, 824–25 (7th Cir.1985) (upholding district court's conclusion to deny a request for an examination based solely on defense counsel's unsworn statement; the court concluded that such a statement did not set forth reasonable cause for such an examination, and informed defense counsel that such motion would be reconsidered if her assertions were placed in an affidavit and made more detailed), *cert. denied*, 474 U.S. 1076, 106 S.Ct. 838, 88 L.Ed.2d 809 (1986). For all these reasons, we conclude that the district court did not err in denying the motion for a competency hearing.

### Conclusion

For the foregoing reasons, we must affirm Mr. Garrett's conviction.

AFFIRMED.