27 F.3d 568
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Virgil Lebron HAYES, Edward James Golson, Defendants-Appellants.
 Nos. 93-5012, 93-5013.
 United States Court of Appeals, Sixth Circuit.
 June 14, 1994.
 
 Before: MARTIN, RYAN, and SUHRHEINRICH; Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 Virgil Lebron Hayes and Edward James Golson pled guilty to various counts of drug trafficking activity. In their plea agreements, the defendants reserved the right to appeal the denial of their motion to suppress. They now appeal the district court's ruling denying their motion. Virgil Hayes also appeals his sentence, contending that it is a violation of double jeopardy to require that the five year prison term for possession of a firearm during a drug trafficking crime run consecutive to a sentence for being an armed career criminal.
 
 
 2
 We affirm the district court's decisions on both of these issues.
 
 I.
 
 3
 Most of the facts relevant to the suppression issue were developed at the hearing on the motion to suppress, at which the defendants and Chattanooga, Tennessee Police Officer Mike Walden, the principal government witness, told very different stories. While the district court did not make detailed factual findings, its opinion and order essentially adopts Officer Walden's testimony in its entirety. Therefore, the facts as found by the district court largely reflect Officer Walden's version of the events.
 
 
 4
 At some point in his career, Walden spent eleven months working as an undercover narcotics officer. He then spent approximately three years as a uniformed patrolman in Chattanooga, Tennessee. During that period, his patrol district included the Westside Housing Project. Beginning in early October 1990, Walden was assigned to a foot patrol that included the housing project and its immediate vicinity. The Grove Street Market is located directly across from the housing project. The market and its parking lot are a popular local hangout and are also notorious for drug trafficking.
 
 
 5
 Either shortly before or shortly after he began his foot patrol, Walden received information from several individuals that defendants controlled the drug trade at the market. During the time he was on foot patrol, Walden was not available for calls outside the assigned area. This allowed him extra time to conduct surveillance on Hayes and Golson. Walden watched them for almost three months, and testified that during this time he saw about one hundred instances of what he believed to be drug transactions.
 
 
 6
 Over the three month period, Walden saw both Hayes and Golson deliver packages to individuals in vehicles that stopped briefly near the market and receive something in return. On several occasions, Walden could see that money was passed from the vehicle to Hayes or Golson. Walden also observed third parties apparently acting as "go betweens" for Hayes and Golson. These men would approach the vehicles, make the exchange with the occupants, and then turn the money they had received over to Hayes and Golson. Hayes and Golson often had their vehicles at the market and appeared to use them to store drugs.
 
 
 7
 In addition to this activity, Walden knew from various sources at the police station that Hayes had previously been arrested in his car with a small amount of drugs and a pistol. Walden also knew that Hayes was out on bond pending his trial on murder charges. The killing occurred somewhere near the market.
 
 
 8
 Events came to a head on December 28, 1990. On that date, Walden witnessed Hayes's involvement in what appeared to be two drug transactions. In addition, Hayes appeared to make a trip to his car, presumably to get more drugs. Walden also testified that Golson was present in the parking lot during this hour or so of surveillance. The record, however, does not indicate that Walden observed Golson engage in any drug transactions on this date.
 
 
 9
 All vehicular approaches to the market are visible from the market's parking lot. At Walden's request, police vehicles with flashing lights were positioned down one of the streets to distract defendants. Walden and another police officer then came around the side of the building and ordered Hayes, Golson, and two other men to put their hands against the building.
 
 
 10
 Walden searched Hayes and found some rocks of crack cocaine. He then handcuffed Hayes, although it is not clear at what point Hayes was told that he was under arrest. Walden testified, however, that he went to the market with the intention of arresting Hayes and Golson. After arresting Hayes, Walden searched Hayes's car, which was located five to seven feet away. This search revealed a loaded .38 caliber pistol, 12 packages of crack cocaine, each containing two rocks, and two bags of marijuana. A shotgun was found in the trunk, and a later inventory search of the car revealed another 30 packages of crack cocaine, again each containing two rocks.
 
 
 11
 While Walden was occupied with Hayes, another officer searched Golson. This search revealed no drugs, but Golson was carrying a large amount of cash. Golson and the officers got into a discussion about accounting for the cash. Golson was not in handcuffs, apparently because the officers knew they needed his signature on the receipt for the money. At this point, the stories of Golson and Walden become diametrically opposed.
 
 
 12
 Walden testified that Golson was told he was not free to leave, but he left anyway during the confusion. Golson testified that the officer who searched him could not find the proper paperwork to account for the cash that was seized, so he told Golson to go to the jail alone to sign the papers. Golson says his wife drove him to the jail and they waited outside for awhile, but no one ever showed up to tell him what to do. In any event, it is clear from the testimony that Golson tried at least once, and possibly several times during the next couple of days, to turn himself in after he learned that the officers were looking for him. Officer Walden, however, had not completed the necessary paperwork to obtain an arrest warrant before he went off duty for several days. Consequently, no one at the police station knew what Golson was talking about when he appeared to turn himself in, so they sent him home. When Walden returned to work, he once again found Golson in the parking lot at the market and arrested him.
 
 
 13
 After Golson left the market following the initial confrontation on December 28, the officers obtained a search warrant for his vehicle. A search of the truck revealed a loaded pistol, one-eighth of an ounce of powder cocaine, and 44 bags of crack cocaine, each containing two rocks.
 
 
 14
 Defendants moved the district court to suppress all the evidence found both on their persons and in their vehicles. The district court denied the motion, and defendants entered into plea agreements. Hayes pled guilty to Count 2--possession of crack with intent to distribute (21 U.S.C. Sec. 841(a)(1)), Count 3--use of a firearm during a drug trafficking offense (18 U.S.C. Sec. 924(c)(1)), and Count 6--being a felon in possession of a firearm (18 U.S.C. Sec. 922(g)(1)). The district court sentenced Hayes to 180 months each on Counts 2 and 6 (to run concurrently), and a consecutive term of 60 months on Count 3.
 
 
 15
 Golson pled guilty to Count 4--possession of crack with intent to distribute (21 U.S.C. Sec. 841(a)(1)) and Count 5--use of a firearm during a drug trafficking offense (18 U.S.C. Sec. 924(c)(1)). He was sentenced to 63 months on Count 4, and a consecutive term of 60 months on Count 5.
 
 
 16
 Pursuant to the terms of their plea agreements, both defendants appeal the denial of their motion to suppress. In addition, Hayes appeals his sentence.
 
 II.
 A. Motion to Suppress
 1. Hayes
 
 17
 Hayes's argument is largely based on an attack upon Officer Walden's credibility. Hayes points to numerous deficiencies in Walden's police work and contends that probable cause did not exist to support either Hayes's arrest or the search of Hayes and his vehicle. When reviewing the denial of a motion to suppress evidence, the appellate court must consider the evidence in the light most favorable to the government. See United States v. Williams, 962 F.2d 1218, 1221 (6th Cir.), cert. denied, 113 S.Ct. 264 (1992). This court applies the clearly erroneous standard to findings of fact when reviewing a district court's ruling on a motion to suppress, id., but we review conclusions of law de novo, id.
 
 
 18
 a. Arrest
 
 
 19
 The definition of probable cause is well established. An officer has probable cause if the
 
 
 20
 facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.
 
 
 21
 Michigan v. DeFillippo, 443 U.S. 31, 37 (1979). Moreover,
 
 
 22
 [t]he establishment of probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."
 
 
 23
 United States v. Barrett, 890 F.2d 855, 861 (6th Cir.1989) (quoting Illinois v. Gates, 462 U.S. 213, 244 n. 13 (1983)). Probable cause is a "fluid concept," which cannot easily be "reduced to a neat set of rules." Gates, 462 U.S. at 232.
 
 
 24
 In the present case, Officer Walden had abundant evidence to establish probable cause. He had received incriminating information about the defendants and had conducted a surveillance of their activities for almost three months. Over the period of surveillance, Walden witnessed defendants' involvement in approximately one hundred events which appeared to be drug transactions. Defendants would approach the occupants of temporarily stopped vehicles, hand a small package to one of the occupants in the vehicle, and then receive something in return. On several occasions, Walden was able to identify the "something in return" as cash. Walden also witnessed third parties, acting as intermediaries, conduct the transactions between defendants and the people in the vehicles. Walden testified that these transactions fit the pattern of drug deals.
 
 
 25
 It is clear that these activities, viewed in their totality, afforded Officer Walden probable cause to believe that Hayes was involved in drug trafficking. Probable cause becomes doubtful only if Officer Walden's testimony is doubted. The district court found that Walden was credible and we are bound by that determination, since there is no basis to conclude that it is clearly erroneous. It is elemental that an officer who has probable cause to believe a felony is being or has been committed need not obtain a warrant prior to arresting the suspect in a public place. United States v. Watson, 423 U.S. 411 (1976). Walden testified that he and his partner entered the market parking lot with the intention of arresting Hayes and Golson. There is no question that Hayes was under arrest because he was handcuffed and taken into custody at the scene, immediately upon being confronted by Walden.
 
 
 26
 b. Search of Hayes's Person
 
 
 27
 Once a person is validly arrested, the police may search that person without obtaining a warrant. DeFillippo, 443 U.S. at 35. "The constitutionality of a search incident to an arrest does not depend on whether there is any indication that the person arrested possesses weapons or evidence. The fact of a lawful arrest, standing alone, authorizes a search." Id. Whether or not the officers searched Hayes before they formally arrested and handcuffed him is also irrelevant:
 
 
 28
 Where the formal arrest followed quickly on the heels of the challenged search of [defendant's] person, we do not believe it particularly important that the search preceded the arrest rather than vice versa.
 
 
 29
 Rawlings v. Kentucky, 448 U.S. 98, 111 (1980). Of course, the probable cause to support the arrest cannot be based on any evidence found during that search. Smith v. Ohio, 494 U.S. 541 (1990).
 
 
 30
 The police had probable cause to arrest Hayes at the time they entered the parking lot on December 28. Thus, they are not relying on the crack cocaine found during the search of Hayes's person to justify the arrest. Accordingly, both the arrest and the search were proper, and the motion to suppress the evidence seized from Hayes's person was properly denied.
 
 
 31
 c. Search of Hayes's Car
 
 
 32
 During the three months of surveillance, Walden observed defendants apparently using their vehicles as "supply depots" for drugs. As the officers had probable cause to believe Hayes had drugs in his car, they could search his entire vehicle without a search warrant. United States v. Paulino, 935 F.2d 739, 747 (6th Cir.1990), cert. denied, 112 S.Ct. 315 (1991). In addition, "probable cause extends to every part of the vehicle and any containers that may conceal the object of the search." Id. Accordingly, the search of Hayes's car was valid.
 
 2. Golson
 
 33
 Golson argues that he was not arrested on December 28 and that the police violated the Fourth Amendment when they seized the contraband in his truck. The government responds by arguing that Golson was properly arrested on December 28 and that the evidence found in his truck is not the "fruit of the poisonous tree." However, we need not decide this issue. Assuming, without deciding, that Golson was not arrested, the seizure of the evidence supporting his plea agreement was valid because it was made upon the authority of a search warrant. The validity of the warrant has not been challenged on appeal. Accordingly, Golson has not presented this court with any reasons why the evidence seized from his vehicle should be suppressed.
 
 B. Hayes's Sentence
 
 34
 Count Six of the indictment charged Hayes with being a felon in possession of a firearm, in violation of 18 U.S.C. Sec. 922(g)(1). Hayes pled guilty to this count, and the plea agreement explicitly stated that Hayes's sentence for this crime would be based on 18 U.S.C. Sec. 924(e)(1). Section 922(g)(1) makes it a crime for a convicted felon to possess a firearm in or affecting commerce. When a defendant has three or more prior felony convictions, however, this crime becomes punishable under section 924(e)(1). Section 924(e)(1) mandates a minimum sentence of 15 years, and Hayes was sentenced to 15 years on this count. The district court ruled that this portion of Hayes's sentence should run concurrently with his 180 month sentence for possession with intent to distribute.
 
 
 35
 In addition to these two concurrent 180 month terms, Hayes received a 60 month consecutive term for possession of a firearm in connection with a drug trafficking offense, in violation of 18 U.S.C. Sec. 924(c)(1). This statute explicitly provides that
 
 
 36
 [n]otwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence or drug trafficking crime in which the firearm was used or carried.
 
 
 37
 Id. Hayes argues that, in his case, this consecutive term violates double jeopardy. He recognizes that the two crimes, being a felon in possession of a firearm and possession of a firearm in connection with a drug trafficking offense, involve different elements, but contends that the prison term imposed under section 924(c)(1) should only run consecutive to the substantive drug trafficking offense, not to the section 924(e)(1) sentence. A defendant's challenge to his sentence on constitutional grounds presents a question of law we review de novo. Cf. United States v. Knipp, 963 F.2d 839, 843 (6th Cir.1992).
 
 
 38
 Hayes's argument has three separate parts. First, he argues that, as a practical matter, sections 922(g)(1) and 924(c)(1) punish the same activity--possessing a firearm while committing a crime. As Hayes concedes, however, several other circuits have rejected this argument. Indeed, as pointed out by the government, all circuits that have addressed this argument have rejected it. See, e.g., United States v. Young, 936 F.2d 1050, 1056 (9th Cir.1991); United States v. Lawrence, 928 F.2d 36, 38 (2d Cir.1991); United States v. Garrett, 903 F.2d 1105, 114-15 (7th Cir.), cert. denied, 498 U.S. 905 (1990). These courts explicitly found no double jeopardy problem and also held that the sentences conformed to congressional intent. Hayes contends, however, that these cases did not adequately focus on the key issues. He then presents a rather convoluted two-part argument based on legislative history and statutory construction.
 
 
 39
 The first part focuses on the sequence in which Congress amended the relevant statutes. In 1984, Congress amended section 924(c) to provide for a consecutive five year sentence. Not until 1986, however, did Congress amend section 922(g) to make it a crime for felons to possess a firearm in or affecting commerce. Thus, Hayes concludes, Congress could not have intended in 1984 that the five year sentence would be consecutive to a sentence for a crime which did not exist until 1986. This part of the argument is easily dismissed. In 1986, Congress knew that section 924(c)(1) called for a consecutive sentence. If it did not intend that a consecutive section 924(c)(1) sentence apply to section 922(g)(1) sentences, Congress could easily have said so. The fact that Congress did not implies that the 924(c)(1) sentence must run consecutively to the 922(g)(1) sentence. This conclusion is further reinforced by the plain language of 924(c)(1).
 
 
 40
 Hayes's second argument discusses the relationship between section 924(c)(1) and 924(e)(1). Obviously, both provisions are subsections of the same statute. Hayes argues that each subsection provides for an "enhancement" of a basic sentence. According to Hayes, it is improper and would violate the rules of statutory construction for one enhancement to be consecutive to another enhancement. Hayes provides no support for this argument, and we do not find it to be persuasive. We find no legal infirmity in the sentence handed down by the district court, and we therefore AFFIRM.