UNITED STATES of America,
Plaintiff–Appellee,

v.

Larry D. COOPER and Daryl
O. McCleese, Defendants–
Appellants.

Nos. 90–1677, 90–2523.

United States Court of Appeals,
Seventh Circuit.

Argued May 14, 1991.

Decided Sept. 11, 1991.

Rehearing Denied Nov. 4, 1991.

Andrew B. Baker, Jr., Asst. U.S. Atty. (argued), Office of U.S. Atty., Dyer, Ind., David H. Miller, Asst. U.S. Atty., Office of U.S. Atty., Fort Wayne, Ind., for U.S., plaintiff-appellee.

N.C. Deday–LaRene (argued), Detroit, Mich., for Daryl O. McCleese.

Frank J. Gray (argued), Beckman, Lawson, Sandler, Snyder & Federoff, Fort Wayne, Ind., for Larry D. Cooper.

Before CUDAHY and MANION, Circuit Judges, and WILL, Senior District Judge.*

MANION, Circuit Judge.

Larry Cooper and Daryl McCleese were charged in a five-count, six-defendant cocaine distribution conspiracy in Fort Wayne, Indiana. Cooper went to trial and was convicted; McCleese pleaded guilty to two counts. On appeal they raise a host of issues. We affirm.

## I. Proceedings

In August of 1988, a federal grand jury indicted Cooper and McCleese, along with William Comer, Richard Fisher, Robin Ar-

nett and Greg Pierson, for their parts in a conspiracy to distribute cocaine. All six defendants were charged in Count I with conspiracy to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. § 846. McCleese also was charged in Count III with using and carrying two firearms in connection with the offense of conspiracy to distribute cocaine, in violation of 18 U.S.C. § 924(c).

Cooper and Pierson were the only defendants who proceeded to trial. Before the other defendants pleaded guilty, however, Cooper sought to sever his trial, arguing that there was very little evidence against him as compared to the other defendants. Cooper also filed a motion in limine that sought to prevent the government from eliciting evidence about a prior cocaine possession conviction involving Cooper and McCleese. The court, following briefing and a hearing, denied the motion in limine in an August 29, 1989 written order. Cooper and Pierson were tried before a jury on December 4 and 5 of 1989. Cooper was convicted of conspiracy to distribute cocaine, and was sentenced to 135 months imprisonment and four years of supervised release. Pierson was acquitted.

McCleese pleaded guilty to both counts pursuant to a plea agreement. In the plea agreement McCleese admitted he was the organizer and leader of five or more persons in a conspiracy to distribute between five and 14.9 kilograms of cocaine. He also acknowledged that he "used or carried two firearms" in connection with the conspiracy, in that he accepted delivery of a large quantity of cocaine and had on hand about $135,000 in cash from his cocaine sales while possessing the firearms in his house. McCleese also agreed not to contest the forfeiture of cash, jewelry, two firearms, an automobile and a motorcycle that were proceeds or derived from proceeds of his criminal activity. The parties stipulated to the offense level the parties believed McCleese deserved under the guidelines, although those stipulations

---

* The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation.

were not binding on the court. McCleese further agreed to testify truthfully at the trial of any co-conspirators. On March 10, 1989, McCleese pleaded guilty to both charges against him pursuant to the plea agreement, and provided the necessary verbal affirmations regarding his guilty conduct to the district court as required by Fed.R.Crim.P. 11(c).

But McCleese reconsidered portions of his plea, and on August 29, 1989 filed a motion to set the plea aside. McCleese argued in the motion that he should be allowed to withdraw his guilty plea on Count III because there was no factual basis for the firearms charge.[1] Following a hearing, the court on November 1, 1989 denied the motion in a written order. McCleese testified as a government witness in the trial of Cooper and Pierson on December 4, 1989, and Cooper called him as a defense witness the next day. Also on December 5, McCleese changed his mind again, this time moving to withdraw his motion to set aside his guilty plea and asking the court to proceed with sentencing in accordance with the plea agreement. On December 18, 1989, the court accepted that motion during a hearing on disputed sentencing issues. Following briefing by the parties, on May 17, 1990 the court in a written order decided the disputed issues in favor of the government, concluding that McCleese was responsible for between five and 14.9 kilograms of cocaine, that the disputed property was subject to forfeiture, that McCleese's offense level should be increased two levels for obstruction of justice, and that McCleese was not entitled to an acceptance of responsibility reduction. On July 11, 1990, McCleese was sentenced to 235 months imprisonment on Count I with four years supervised release and five years imprisonment on Count III, to run consecutively to the Count I sentence. The court also ordered the forfeiture of cash and property obtained through the conspiracy.

## II. Facts

### A. Evidence From Cooper's Trial

McCleese, a gambler from Fort Wayne, bought cocaine from Richard Fisher of Florida and distributed it to a number of people in Fort Wayne and Detroit. William Comer, who testified pursuant to a plea agreement, was one of his regular customers, purchasing about 10 ounces per month between 1985 and 1988. Comer said he originally sold to Cooper, but in 1986 McCleese became Cooper's main supplier, although Comer twice sold cocaine to Cooper in 1988, once when McCleese ran out and another time when McCleese was out of town. On one occasion Cooper told Comer he needed a few ounces more for his customers from Ohio. Comer testified that Cooper was selling the cocaine he received to people "in the bars."

McCleese, who said at his change of plea hearing that he conspired with Cooper and others to distribute cocaine, testified at Cooper's trial that Cooper was not part of the conspiracy. McCleese said he thought the cocaine he sold Cooper was for Cooper's own use, or for Cooper's addicted wife, or to "part[y] with broads." McCleese said he never delivered ounce quantities to Cooper; however, he and Cooper were arrested after he handed Cooper an ounce of cocaine in 1987 that Cooper delivered to an informant. Both pleaded guilty to misdemeanor possession of cocaine charges. McCleese testified that he did not know Cooper was selling cocaine. McCleese and Cooper had been friends for about 10 years; Cooper lived with McCleese for a short period of time. Cooper learned of the investigation of McCleese and twice warned him about it.

Greg and Michelle Keller testified that they purchased half an ounce of cocaine per month from Cooper from January through August of 1988. Jeff Keller said he received cocaine from Cooper during the same period, and that he saw Cooper provide cocaine to other friends.

---

**1.** McCleese also sought to withdraw from his agreement to forfeit certain property, and to reduce the amount of cocaine for which he had agreed to be held responsible under the guide-

lines. At the hearing on the motion, the court suggested these issues involved the question of punishment, not guilt. McCleese agreed, and later withdrew his motion on these issues.

Cooper testified that he started using cocaine two-and-a-half years before trial, and that he gave some to his wife and her friends. He said he did not sell cocaine to the Kellers, but did share some with them socially. He denied purchasing any cocaine from Comer, but admitted purchasing cocaine from McCleese.

## B. ·Evidence From McCleese's Hearings

### 1. Guns.

The FBI obtained arrest warrants for McCleese, Fisher, Comer and Arnett and a search warrant for McCleese's residence. On August 7, 1988, federal agents watched Fisher arrive in Fort Wayne and check into a motel across the street from McCleese's residence. Fisher phoned McCleese and McCleese went to the motel to meet Fisher. McCleese then returned home and Fisher drove his Cadillac into McCleese's garage. About 20 minutes later the agents entered McCleese's home to execute the search and arrest warrants.

McCleese was arrested as he came out of the rear bedroom; Fisher was arrested in the rear bedroom. In that bedroom the agents found $135,000 in cash in a compartment in the headboard of the bed. One gun was laying in the open on top of the headboard, within a few feet of the cash. Another gun was found in a robe in the closet. A triple beam scale of the type used in weighing drugs was found in the kitchen. An electronic anti-bugging device was discovered in the living room, along with suspected drug records. Five kilograms of cocaine were found in a secret, locked compartment behind the rear seat of Fisher's Cadillac. Fisher had possession of the key to the compartment.

### 2. Quantity of drugs.

McCleese testified that he personally handled only about three-and-a-half kilograms of cocaine, but that co-conspirator Comer handled enough cocaine to bring the quantity over five kilograms. He explained that he began obtaining cocaine for Comer in 1985, and that Comer asked him to be his partner in 1987. Comer testified that McCleese was receiving three or four kilograms of cocaine every 10 days. Comer said he was never there for delivery, but that on six to eight occasions he saw the cocaine at McCleese's house shortly after delivery in the garbage can where it was stored by McCleese.

### 3. Obstruction of justice.

Comer testified that McCleese had a copy of Comer's plea agreement, which revealed Comer's cooperation with authorities, and was showing it to other inmates at the Metropolitan Confinement Center where McCleese and Comer were incarcerated. McCleese sent a message to Comer that Comer did not have to testify as he had planned. Arnett testified that McCleese frequently called her to find out how she planned to testify. Arnett said she thought McCleese was capable of killing people and that she was afraid to testify. Terry Fey, who bought cocaine from McCleese, Comer and Arnett, testified that he was in the same cell block as Cooper, and that Cooper told him McCleese was angry that others were testifying against him. Fey said he was nervous about testifying because he did not want to be killed, and feared McCleese was capable of murder. Fey told Arnett that Cooper said she and Comer would be killed because of their testimony. McCleese denied making any threats.

## III. Discussion

### A. Cooper's Appeal

#### 1. Motion to sever.

In Cooper's motion to sever, he argued that the evidence against him was much less than against the other defendants, and that he would be prejudiced by a joint trial because the stronger evidence against other defendants might be used against him. On appeal he argues exactly the opposite. All but one other defendaiit pleaded guilty, and now Cooper argues that his trial should have been severed from Pierson's because there was so little evidence against Pierson that, by comparison, the evidence against him looked sufficient to support conviction.

Cooper argues that the district court abused its discretion by failing to rule on the motion to sever. However, Cooper asked the court to postpone ruling on the motion until after it heard evidence on the motion to suppress. Two months later, at a status conference shortly before trial, two more defendants indicated they would plead guilty, leaving only Pierson and Cooper. Cooper did not remind the court about his motion to sever, probably because everyone thought the issue was moot since the defendants who had the most evidence against them had all pleaded guilty. On the morning of trial, when the court asked about any remaining issues before bringing in the jury, Cooper only mentioned his motion in limine. Cooper failed to renew the motion for severance at the close of the government's case or the close of evidence.

 Cooper's argument is a three-way loser. In the first place, his failure to renew the motion for severance at the close of evidence waives the issue on appeal. *United States v. Brown,* 870 F.2d 1354, 1359–60 (7th Cir.1989). Second, his attempt to argue the opposite position on appeal means he never presented those grounds for severance to the district court. Cooper may not raise an issue on appeal that he did not give the district court an opportunity to decide. *See, e.g., Garlington v. O'Leary,* 879 F.2d 277, 282 (7th Cir.1989) ("The fact that the general issue ... was before the district court would not normally be enough to allow Mr. Garlington to assert on appeal his newly raised argument...."). Finally, even if we were to consider the merits, Cooper has failed to meet the heavy burden for showing prejudice in a joint trial with an alleged co-conspirator. *United States v. Bond,* 847 F.2d 1233, 1240 (7th Cir.1988) (Joint trial for co-conspirators is presumptively appropriate.). The jury's acquittal of Pierson demonstrates that it was capable of weighing the evidence against each defendant separately, and the evidence of Cooper's guilt was more than sufficient to support his conviction.

2. Motion in limine.

The district court denied Cooper's motion in limine which sought to prevent the government from introducing evidence of Cooper's prior conviction for cocaine possession. The court then allowed evidence, pursuant to Fed.R.Evid. 404(b), of the factual circumstances surrounding the conviction. McCleese testified that he gave Cooper an ounce just before they were arrested, and that Cooper gave it to an informant. Cooper also claims the court's failure to instruct the jury that this evidence was to be used for the limited Rule 404(b) purposes is plain error.

 The district court did not abuse its discretion by allowing evidence of the prior drug conviction involving McCleese and Cooper. Evidence of a prior drug transaction is admissible under 404(b) to show a defendant's intent to take part in a conspiracy, his opportunity to acquire and distribute cocaine, and his knowledge of the distribution network. *United States v. Shukitis,* 877 F.2d 1322, 1329 (7th Cir. 1989). Nor was it error for the government to elicit evidence beyond the conviction itself; to show intent, opportunity, and knowledge, the jury needed to know the factual circumstances of the transaction and arrest. Finally, Cooper's failure to request a limiting instruction at the time the evidence was presented or during preparation of jury instructions means we review only for "plain error." *United States v. Liefer,* 778 F.2d 1236, 1253 (7th Cir. 1985). Here there was no plain error; even without the prior bad acts evidence, other evidence of Cooper's guilt was overwhelming.

3. Questions about Comer's drug sales to others.

 Cooper attempted to cross-examine Comer about other individuals he or McCleese sold drugs to between January and August of 1988. The government objected to Cooper's request that Comer give the names of other buyers, arguing that other investigations might be jeopardized and that the question was irrelevant. The court said it would sustain the objection

unless Cooper provided specific reasons the information was needed. Cooper's attorney responded: "Let me go on, your Honor. I will withdraw that question or leave it where it stands at the present time." Cooper never returned to the subject, and never provided the court with a reason the names of other drug buyers were needed. Absent plain error, we hold that Cooper's withdrawal of the question waives the issue for appeal. On appeal Cooper argues he hoped to use Comer's list of buyers to impeach him, by calling the buyers Comer named and having them testify that they never bought from Cooper. Even if the buyers testified as Cooper hoped, this was not plain error, given the limited effect such tangential impeachment would have on the jury, and given the overwhelming evidence against Cooper.

### 4. Possession of cocaine instruction.

Cooper admitted possessing cocaine for his personal use. He argues on appeal that the district court erred by not giving the jury a lesser offense instruction for possession of cocaine. Yet Cooper did not ask for the lesser offense instruction below, so the argument again is waived absent plain error. *United States v. Briscoe*, 896 F.2d 1476, 1513 (7th Cir.1990). There was plenty of evidence at trial that Cooper sold cocaine to others, and was a part of the conspiracy to distribute cocaine, so this was not plain error.

### 5. Cooper's sentence.

On appeal Cooper raises two challenges to his sentence. First he argues that he should not be held responsible for the five to 14.9 kilogram amount charged to McCleese. We review the district court's factual determination of the amount of drugs each defendant was responsible for under the clearly erroneous standard. *United States v. Buggs*, 904 F.2d 1070, 1078 (7th Cir.1990). Drug conspirators are sentenced based on the amount of drugs involved in all transactions known to the defendant or that were reasonably foreseeable. *United States v. Savage*, 891 F.2d 145, 151 (7th Cir.1989).

The evidence established that Cooper was involved with much greater amounts than the small amounts he admitted purchasing for use with his wife and friends. Further, the court did not clearly err in finding that the government showed by a preponderance of the evidence that Cooper could reasonably foresee the amount of cocaine co-conspirator McCleese was dealing with. The two had been friends for 10 years, met socially on a regular basis, and even lived together for a brief time during the conspiracy. They were arrested together for possessing cocaine in 1987. Cooper twice tried to warn McCleese of the FBI's investigation. The court correctly held Cooper responsible for the full amount of cocaine involved in the conspiracy.

Second, Cooper contends he was entitled to a reduction for being a minor or minimal participant in the conspiracy under guidelines § 3B1.2. This argument is waived, absent plain error, because Cooper did not raise the issue below. *United States v. White*, 903 F.2d 457, 466–67 (7th Cir.1990). Here again there is no miscarriage of justice, and no plain error. Cooper was not less culpable than other members of the conspiracy, and he was more than a minimal participant. The minor participant reduction has been refused for drug conspirators less culpable than the evidence here showed Cooper to have been. *See, e.g., United States v. Gordon*, 895 F.2d 932, 935 (4th Cir.1990) (drug courier); *United States v. Velasquez*, 890 F.2d 717, 720 (5th Cir.1989) (driver of vehicle carrying drugs).

### B. McCleese's Appeal

#### 1. Denial of motion to withdraw guilty plea.

McCleese challenges his plea of guilty to Count III, which charged him with violating 18 U.S.C. § 924(c) by using or carrying firearms in relation to the crime of conspiracy to distribute cocaine. The "stringent" burden on a defendant challenging a district court's denial of a motion to withdraw is to "demonstrate that a fair

and just reason for withdrawing the plea" exists. *United States v. Ray,* 828 F.2d 399, 422 (7th Cir.1987) (citing cases):

> A defendant does not have an absolute right to withdraw his guilty plea, and the decision whether to allow him to do so is within the sound discretion of the trial court. The decision will be reversed only on a showing of abuse of discretion. The trial court's findings regarding whether the defendant has demonstrated a fair and just reason will be upheld unless "clearly erroneous."

*Id.* (citations omitted).

McCleese challenges the voluntariness and the factual basis for his plea. The district court rejected both assertions.

The plea agreement signed by McCleese included this statement:

> He used or carried two firearms during and in relation to the drug trafficking crime of conspiracy in that he had the firearms present in his home at a time when he was taking delivery of a large quantity of cocaine and had on hand approximately $135,000 in cash as a result of his cocaine distribution activities.

When McCleese pleaded guilty on March 10, 1989, the district court engaged him in a discussion to make certain McCleese understood the factual nature of the charges against him:

> Q. All right. In connection with the allegations in Count III, did you, as charged there, on August 7, 1988, in the Northern District of Indiana, in relation to a drug trafficking offense, carry two firearms, a Charter Arms .38 caliber revolver and a Smith & Wesson .38 caliber revolver?
>
> A. I had them in my home.
>
> Q. Was that the date you were apprehended?
>
> A. August 7, yeah.
>
> Q. And these firearms were in your home at that time?
>
> A. They were in the home, yeah.
>
> Q. Did they belong to you?
>
> A. Yes.

(Transcript IV at 11).

At the hearing the government responded to the court's request by providing a summary of the evidence it was prepared to provide, which included "testimony regarding ... the seizure of money and assets, the seizure of 5 kilograms of cocaine, seizure of firearms and their proximity to the money and the defendants." McCleese said he agreed with that summary of the evidence.

However, McCleese now argues that he never admitted to using or carrying the guns in relation to the crime of conspiracy to distribute cocaine, so there is no factual basis for the plea. He argues that the government gave him a "take it or leave it" choice between pleading guilty to both counts, in which case the government would recommend sentencing at the low end of the guidelines, or going to trial on both counts. He claims he elected to plead guilty in the hope of obtaining a lower sentence, but that he never really admitted guilt on the Count III firearms charge.

We hold that the district court did not abuse its discretion by denying McCleese's motion to withdraw his guilty plea. The terms of the plea agreement, the colloquy with the district court, and McCleese's agreement with the government's summary of the evidence together make clear, without a doubt, that McCleese's plea was voluntary and that a sufficient factual basis existed for the plea.

McCleese admitted that he owned the guns, that they were in his home, and that they were in the bedroom where he and Fisher were negotiating the purchase of five kilograms of cocaine. That is the same bedroom where $135,000 in cash, probably to be used to purchase the five kilograms of cocaine in Fisher's car, was hidden. In fact, one of the guns was in plain view a few feet above where the cash was stashed.

Having a gun accessible during a drug transaction is sufficient to meet the "use or carry" requirement of 18 U.S.C. § 924(c). *See, United States v. Garrett,* 903 F.2d 1105, 1111 & n. 7 (7th Cir.1990) (citing

cases); *United States v. Molinar–Apodaca*, 889 F.2d 1417, 1424 (5th Cir.1989) ("... the Government is only obliged to show that the firearm was available to provide protection to the defendant in connection with his engagement in drug trafficking; a showing that the weapon was used, handled or brandished in an affirmative manner is not required."). The facts McCleese admitted to in the plea agreement and during the colloquy provide sufficient factual support for the plea, and show that he was guilty of the crime. The presence of guns near the money and the defendants in the midst of a drug transaction was established by the plea agreement and by McCleese's admissions. Regardless of McCleese's claimed lack of intent to use the guns in connection with the drug crime, the factual basis for his guilty plea was properly established. The district court was correct to reject the motion to withdraw his guilty plea.

### 2. McCleese's sentence.

McCleese raises several challenges to his guidelines sentence, which we review under the clearly erroneous standard. None of the arguments presents a close case for reversal, so our discussion of each contention will be brief.

#### a. Amount of drugs.

 We have already ruled that the district court was not clearly erroneous in computing Cooper's sentence by counting more than five kilograms of cocaine. The evidence against McCleese is even stronger. McCleese executed a plea agreement acknowledging that he was responsible for between five and 14.9 kilograms of cocaine. He admitted personal responsibility for 3.5 kilograms, and other evidence pointed to his personal involvement with more than five kilograms. He also admitted that he knew of his partner Comer's involvement in amounts that, added to his own 3.5 kilograms, would add up to more than five

kilograms. The district court amply supported its determination on this issue, and correctly set McCleese's base offense level at 32.

#### b. Acceptance of responsibility.

 The district court refused to grant a two-point reduction for acceptance of responsibility under guidelines § 3E1.1 because it concluded that McCleese testified falsely in the trial of Cooper and Pierson, and that he had threatened or intimidated witnesses in an attempt to influence their testimony. These findings are not clearly erroneous. The district court's written order thoroughly supports the finding that McCleese's testimony was inconsistent and untruthful regarding the amount of cocaine with which he was personally involved. Further, his increase for obstruction of justice indicates that he does not deserve an acceptance of responsibility reduction. *See* § 3E1.1, Application Note 4.

#### c. Obstruction of justice.

 The evidence easily supports the district court's two-point upward adjustment for McCleese's obstruction of justice under § 3C1.1. Application Note 1 to § 3C1.1 [2] states

[t]he following conduct, while not exclusive, may provide a basis for applying this adjustment:

. . . . .

(c) testifying untruthfully or suborning untruthful testimony concerning a material fact....

(d) threatening, intimidating, or otherwise unlawfully attempting to influence a co-defendant, witness, or juror, directly or indirectly....

As discussed above, McCleese's testimony was not truthful in some important respects. Further, several witnesses testified that McCleese attempted to intimidate them into changing their testimony regarding his involvement in the conspiracy.[3] Ei-

---

**2.** McCleese was sentenced under the guidelines prior to their November 1, 1990 revisions.

**3.** It appears that at least some of the intimidation alleged may have involved witnesses in a

trial separate from McCleese's. While this may be an interesting issue to explore when applying § 3C1.1, since neither party raised it, it is waived.

ther of those facts alone are sufficient to support an upward adjustment for obstruction of justice.

#### d. McCleese's role as organizer and leader.

Guidelines § 3B1.1 requires a four-level upward adjustment "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." We review the district court's determination that McCleese was the leader of the Fort Wayne conspiracy only for "plain error," because McCleese failed to challenge this ruling below.

McCleese signed a plea agreement acknowledging he was the leader of the conspiracy involving five or more persons. The presentence report, which McCleese did not object to, stated:

> Daryl Oscar McCleese's role in the conspiracy is as the established leader and organizer. Through wiretaps and other surveillance methods, agents determined Mr. McCleese received frequent telephone calls from other codefendants and other known drug dealers. McCleese also exhibited a very comfortable lifestyle with no means of employment. When the search warrant was executed, a large amount of cash in addition to cocaine was seized.

The district court did not commit plain error in giving McCleese an upward adjustment for being the conspiracy's leader, as contemplated by the plea agreement signed by McCleese. The evidence, much of which he admitted to, amply demonstrated his leadership role by his contact with other conspiracy members, and the amount of drugs and cash he controlled. The district court did not commit any error, let alone plain error.

### IV. Conclusion

Cooper's conviction and sentence were amply supported by the evidence. McCleese's guilty plea on the guns charge was supported by a sufficient factual basis, and the district court did not err in computing his sentence. For all of the foregoing reasons, the district court is, in all respects

AFFIRMED.