980 F.2d 733
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dorothy JACKSON, Defendant-Appellant.
 No. 91-3184.
 United States Court of Appeals, Seventh Circuit.
 Submitted Oct. 22, 1992.*
Decided Dec. 3, 1992.
 
 Before COFFEY and EASTERBROOK, Circuit Judges, and WOOD, JR., Senior Circuit Judge.
 
 ORDER
 
 1
 A jury found the defendant Dorothy Jackson guilty of three counts of knowingly distributing cocaine (21 U.S.C. § 841(a)(1)); one count of possessing cocaine with intent to distribute (21 U.S.C. § 842(a)(1)); and one count of using and carrying a firearm during and in relation to a drug trafficking crime (18 U.S.C. § 924(c)(1)). The court sentenced the defendant to concurrent terms of 166 months' imprisonment on each of the four drug counts; and a consecutive term of 60 months' imprisonment on the gun count. On appeal, the defendant contends that the government failed to prove her guilty of the gun count.
 
 Facts
 
 2
 Three police officers testified that they sent an informant, who was an acquaintance of the defendant, to the defendant's home on May 1, June 12, and July 25, 1990. The informant purchased crack cocaine on each occasion, but was unable to buy a gun from the defendant. On the latter two visits, the informant was wired with electronic eavesdropping equipment. On July 26, 1990, the police executed a search warrant at the defendant's apartment. In a second floor bedroom, on top of a dresser was a white plastic bag containing $1,230.00 in cash, with rubber bands around the currency. On a shelf of the dresser was an unloaded automatic handgun. On the same shelf was the handgun's clip. An identification card for the defendant was on top of a nearby vanity. An unloaded rifle was sitting on the floor of the bedroom closet. Boynton testified further that the police found a white plastic container sitting on a shelf in a first floor storage room in the apartment. Within the container were plastic-wrapped packets of crack cocaine.
 
 
 3
 Gary Smith, an investigator with the Bureau of Alcohol, Tobacco and Firearms (ATF) testified that he was involved in investigating the defendant for selling crack cocaine and firearms from her home in Galesburg, Illinois. On June 12, 1990, the police informant was wired and Smith was able to monitor and record a conversation between the defendant, her friend Trent Briggs, and the informant. On July 25, 1990, Smith again monitored a conversation between the defendant and the informant. Tapes of those conversations were played for the jury and admitted into evidence. Transcripts were also admitted into evidence. On June 12, 1990, the defendant, the informant and Briggs discussed buying guns:
 
 
 4
 [INFORMANT]: Won't you sell me a pistol, man?
 
 
 5
 [DEFENDANT]: What you want a pistol (unintelligible).
 
 
 6
 * * *
 
 
 7
 * * *
 
 
 8
 [INFORMANT]: Hey, remember them pistols you all got me that one day?
 
 
 9
 [DEFENDANT]: I got some.
 
 
 10
 [INFORMANT]: Sell me a pistol.
 
 
 11
 [DEFENDANT]: I got to keep my pistols, man, for protection. Gun for protection."
 
 
 12
 On July 25, 1990, the informant again talked about guns with the defendant:
 
 
 13
 "[INFORMANT]: Thanks Bay [defendant], oh, you remember about that gun?
 
 
 14
 [DEFENDANT]: * * * Come back in here, you want to buy one?
 
 
 15
 [INFORMANT]: Yeah...."
 
 
 16
 The defendant said she had none to sell, and described one customer's "pawning" his gun by leaving it with the defendant until he could pay for his crack.
 
 
 17
 On July 26, 1990, Smith assisted in executing the search warrant, and Smith later interviewed the defendant. Smith testified further that the defendant told him that three times a week she drove to Peoria and obtained crack cocaine from her suppliers.[1] On Thursdays, Fridays, Saturdays and Sundays, she would sell $1,000 worth of crack each day. On other days, she "sold $500 to $600 worth of crack a day." Smith continued:
 
 
 18
 "I then asked her about the firearms in the residence, and she told me that the 25 caliber pistol and the 22 caliber rifle actually belonged to Milton Briggs, who's Trent Briggs' brother, and that Trent Briggs had lived in the residence and had left. She told me that she did have another 22 caliber revolver but she had sold it for $75. She also said that she keeps handguns in that residence in case someone would rob her, she said she would shoot them. She keeps the handguns for protection."
 
 
 19
 Smith later test-fired the handgun and rifle which were seized from the upstairs bedroom, and found that each one of them functioned properly.
 
 
 20
 Trent Briggs testified for the defense that he was a friend of the defendant and that he was currently serving a sentence in prison for robbery and attempt robbery, and a drug charge was also pending against him. Briggs further testified that he was present on June 12, 1990 when the informant, whom Briggs and the defendant knew, arrived at the defendant's home. The informant asked about drugs and guns. Briggs testified that he had no knowledge of any guns in the defendant's home. Briggs testified on cross-examination that he had left a handgun there in July, and forgot to pick it up later. The gun was not intended for the defendant's use, and if the defendant told police she kept the gun for her own protection, she was lying.
 
 
 21
 Briggs denied hearing the defendant (apparently in reference to Briggs' own pistol) say to the informant: "I got to keep my pistols, man, for protection. Gun for protection." Briggs also did not recall the defendant's giving the informant six packets of crack on June 12, although the defendant and the informant were never out of Briggs' sight. The only thing they discussed was guns.
 
 
 22
 On July 2, 1991, a jury found the defendant guilty of distributing cocaine on May 1, June 12, July 25, and July 26, 1990. The jury also found her guilty of unlawful use of weapons on July 26, 1990, but not guilty of unlawful use of weapons on June 12, 1990.
 
 Discussion
 
 23
 In challenging the sufficiency of the evidence, the test is whether, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); United States v. Bafia, 949 F.2d 1465 (7th Cir.1991).
 
 
 24
 Section 924(c)(1) makes it illegal, "during and in relation to any ... drug trafficking crime," to "use[ ] or carr[y] a firearm." 18 U.S.C. § 924(c)(1). There is a "common sense recognition that drug dealing is a dangerous and violent enterprise." United States v. Cummings, 937 F.2d 941, 943 (4th Cir.1991). The defendant maintains that the government failed to prove that she was "using" a firearm during the drug transactions.
 
 
 25
 "Using" has been broadly defined. A gun is "used" if its presence "increased the likelihood of success" of the drug crime as a means of protection or intimidation, or if its presence provides the defendant with the "security and confidence needed to undertake such a large cocaine transaction." United States v. Rosado, 866 F.2d 967, 970 (7th Cir.1989), quoting United States v. LaGuardia, 774 F.2d 317, 321 (8th Cir.1985); see also United States v. Vasquez, 909 F.2d 235, 239 (7th Cir.1990) (firearm locked in car trunk that also contained narcotics). The lack of a "fortuitous absence of a threatening occasion" to use the weapon does not rescue the defendant from culpability under the statute. United States v. Vasquez, 909 F.2d 235, 239 (7th Cir.1990).
 
 
 26
 While the guns involved are often strategically located to be readily accessible for use during the drug transaction ( United States v. Whitley, 905 F.2d 163, 166 (7th Cir.1990)), it is not necessary that the defendant show "intent to use the guns in connection with the drug crime." United States v. Cooper, 942 F.2d 1200, 1208 (7th Cir.1991). This circuit has defined the meaning of "use" of a firearm under the statute as follows:
 
 
 27
 "If the firearm is within the possession or control of a person who commits an underlying crime as defined by the statute, and the circumstances of the case show that the firearm facilitated or had a role in the crime, such as emboldening an actor who has the opportunity or ability to display or discharge the weapon to protect himself or intimidate others, whether or not such display or discharge in fact occurred, then there is a violation of the statute."
 
 
 28
 United States v. Tolliver, 937 F.2d 1183, 1190 (7th Cir.1991), and United States v. Rosado, 866 F.2d 967, 970 (7th Cir.1989), quoting United States v. Stewart, 779 F.2d 538, 540 (9th Cir.1987). See also United States v. Hager, 969 F.2d 883 (10th Cir.1992).
 
 
 29
 This court has had many occasions to determine whether a trier of fact had sufficient evidence upon which to conclude a defendant "used" a gun under § 924(c)(1). See, e.g., United States v. Bafia, 949 F.2d 1465 (7th Cir.1991) (§ 924(c) conviction upheld where defendant carried pistol in gym bag when he went to deliver cash to one of his suppliers); United States v. Tolliver, 937 F.2d 1183, 1190 (7th Cir.1991) (defendant armed himself with gun "to insure success of drug transaction and to offer him protection while he carried over $23,000 in cash to pay for the drugs"); United States v. Cooper, 942 F.2d 1200, 1208 (7th Cir.1991) (gun found laying on top of headboard of bed in room where drug deal transacted; $135,000 in cash in compartment of headboard; second gun in robe in closet; cocaine in car; court finds sufficient factual support of guilty plea where "presence of the guns near the money and the defendants in the midst of a drug transaction"); United States v. Garrett, 903 F.2d 1105, 1111 (7th Cir.1990) (defendant arrested as he tried to open door of car to which he had keys and which contained a bag of cocaine and a weapon under the driver's seat); United States v. Vasquez, 909 F.2d 235, 239-40 (7th Cir.1990) (four handguns located in trunk "amidst a staggering cache of narcotics"); United States v. Ocampo, 890 F.2d 1363 (7th Cir.1989) (gun found under passenger seat where defendant seen trying to conceal an object); United States v. Edun, 890 F.2d 983 (7th Cir.1989) (defendant arrested while walking toward his car and search of car revealed gun in trunk); United States v. Rosado, 866 F.2d 967 (7th Cir.1989) (defendant "using" gun where he placed jacket with gun in pocket in front seat of open car while drug transaction taking place 30 feet away); United States v. Coe, 718 F.2d 830 (7th Cir.1983) (gun found in car's glove compartment, defendant passenger in car).
 
 
 30
 We find that the evidence here was sufficient to raise a factual issue and permit the jury to determine that the defendant "used" a firearm during or in relation to her possession of cocaine with intent to distribute. The defendant's routine pattern of selling crack cocaine from her home was clearly established through the undercover purchases of crack, the defendant's admissions that she sold approximately $6,000 worth of crack each week, and the crack found on the premises when the search warrant was executed.
 
 
 31
 The upstairs bedroom was apparently the defendant's, with a woman's clothes in the closet and her identification on top of a dresser. On top of a second dresser in that bedroom was a bag containing $1,230.00 in cash. The defendant admitted being unemployed. The trier of fact could make the reasonable inference that the $1,230.00 cash was related to the drug trafficking, representing one or two days' worth of drug sales.
 
 
 32
 Within inches of the cash, on a shelf of the dresser, was a pistol. The ammunition clip for that pistol was sitting next to it. A rifle was in the closet of the same bedroom. Notably, the "critical concern is not whether [either] gun was 'instantly available' or 'exclusively dedicated to the narcotics trade,' but whether it was 'available for use' in connections with the narcotics trade." United States v. Castro-Lara, 970 F.2d 976 (1st Cir.1992). The jury was entitled to find that these weapons were meant to protect the drug money, particularly where the drugs were "fronted" to the defendant. The money she collected from her sales needed to be protected, in order that she might be able to turn it over to her suppliers, thus explaining the proximity of the gun and the cash.
 
 
 33
 Furthermore, the jury could reasonably find it significant that the defendant reported during one of the informant's purchases, which was electronically recorded, that she kept weapons for her protection. She told the informant, "I got to keep my pistols, man, for protection. Gun for protection." Similarly, Smith, the ATF agent, testified that the defendant told him she kept "handguns in that residence in case someone would rob her, she said she would shoot them. She keeps the handguns for protection."
 
 
 34
 The fact that the gun may have belonged to Briggs or his brother does not compel us to disturb the jury verdict. Clearly the defendant was in possession of the gun, which she kept in her bedroom and which she could not sell because she needed it for protection. See United States v. Abreu, 962 F.2d 1425, 1432 (10th Cir.1992). The jury could easily have discounted Briggs' testimony to the contrary, given the numerous blows which Briggs' credibility suffered during trial.
 
 
 35
 Furthermore, the conviction is not precluded because the ammunition clip was found inches away from the pistol itself, as there is no requirement that the bullets for the pistol be in the gun. See 18 U.S.C. § 921(a)(3) (firearm is defined as "any weapon ... which will or is designed to or may readily be converted to expel a projectile by the action of an explosive").
 
 
 36
 In viewing the evidence in the light most favorable to the government, we conclude that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Accordingly, we AFFIRM the defendant's conviction under 18 U.S.C. § 924(c)(1).
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 [1]
 They would "front her the cocaine, which basically means they would give her the cocaine without her paying them. She would repay them later for the cocaine she took."